## KAPSEMALIS v. TAYLOR et al.
### No. 2001.

Circuit Court of Appeals, Tenth Circuit.
May 24, 1940.

Glenn O. Young, of Sapulpa, Okl. (R. K. Robertson, of Sapulpa, Okl., and A.L. O'Bannon, of Okmulgee, Okl., on the brief), for appellant.

A. N. Boatman and John L. Maynard, both of Okmulgee, Okl. (T. L. Blakemore, of Sapulpa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This litigation had its inception in a mortgage foreclosure action begun in the District Court of Creek County, Oklahoma, November 26, 1929. The parties will be referred to as they appeared in the court below. Alice M. Douglas and Irene Taylor, nee Douglas, filed their petition in the District Court of Creek County, Oklahoma, seeking foreclosure of a real estate mortgage on certain real estate situated in the city of Sapulpa, Oklahoma, and used in operating a theater. Thomas Kapsemalis was joined as a party defendant, the petition alleging that he claimed some interest in the property. He filed a cross petition setting out that he held a chattel mortgage on an undivided two-thirds interest in the personal property in the theater and asked for the foreclosure thereof. The court entered its judgment foreclosing the real estate mortgage December 10, 1930. The court held that the theater chairs, moving picture projection machinery and attachments, all electric light fixtures and wiring, plumbing fixtures and heating plant equipment, ventilating fans and theater sign, claimed by Kapsemalis under the chattel mortgage, were a part of the real estate

and included in the judgment of foreclosure awarded to Alice M. Douglas and Irene Taylor. As a further part of the judgment, the court entered its decree awarding to Kapsemalis the foreclosure of his chattel mortgage on the personal property in the theater, excluding, however, therefrom the fixtures found to belong to the real estate, and decreed that execution issue upon a two-thirds interest in any personal property located in and used in connection with the theater. The property covered by the real estate mortgage was sold pursuant to the decree of the court and purchased by Irene Taylor, nee Douglas. The decree of the court further directed the receiver who had been appointed to forthwith take full charge and possession of the theater premises and the buildings and improvements located thereon and all the property located in the theater building and to hold the same in his exclusive charge and control. He took possession of the property and remained in possession until about July, 1931, when, the period of redemption having expired and no redemption having been made, Irene Taylor took possession of the property.

Kapsemalis appealed without supersedeas to the Supreme Court of Oklahoma from that portion of the decree awarding to Alice M. Douglas and Irene Taylor the chairs and other fixtures as a part of the real estate. No appeal was taken from the judgment by Alice M. Douglas and Irene Taylor. On September 29, 1936, the Supreme Court of Oklahoma, Kapsemalis v. Douglas, 177 Okl. 522, 61 P.2d 211, affirmed the decree of foreclosure as between Alice M. Douglas and Irene Taylor and Kapsemalis, but reversed the decree as to certain other controversies not material herein. The mandate issued and on December 7, 1936, the court entered its judgment on the mandate.

On December 16, 1936, an execution was issued on the mandate against a two-thirds interest in the following property: One pipe organ, all stage equipment and scenery, pianos, electric fans (except exhaust and ventilating fans), gas fixtures, water fixtures, generators, ticket office equipment, furniture in ticket office and waiting rooms, and all other equipment and supplies of every kind and description used in the operation of the Victorian Theater in the City of Sapulpa, Creek County, Oklahoma, on March 24, 1927, not including, however, the plumbing in said Victorian Theater or the heating plant.

Irene Taylor, Robert K. Taylor and Irene Taylor, executrix of the last will and testament of Alice M. Douglas, deceased, filed a motion to stay the execution as to certain property described therein. On May 10, 1937, the court entered its order staying the execution as to one 100 Amp. Generator N. P. 19785D, one set of dimmers with attachments, and pulleys and rollers attached to said building, and awarded Kapsemalis a first and prior lien upon the following property not levied upon by the Sheriff: Stage scenery, consisting of painted and decorated curtains, frame work, ropes, pulleys, wings and stands, six poster and advertising frames, one spot light, one pipe organ complete, and two ceiling fans.

On October 13, 1937, plaintiff herein filed a petition against the defendants seeking to recover damages. His amended petition alleged the execution of the chattel mortgage, the foreclosure proceedings and the appeal to the Supreme Court and the taking of possession of the property by the defendant. So far as material herein, the petition alleged in substance: That on or about the 26th day of November, 1929, the defendants wrongfully and illegally and under claim of ownership, entered into and took charge of the chattels itemized in the petition; that on December 16, 1936, plaintiff levied an execution conformable to the judgment on the mandate of the Supreme Court and delivered to the Sheriff for service; that thereupon it became the duty of the defendants to surrender and deliver over to the Sheriff for sale the personal properties and chattels described in the petition; that notwithstanding defendants failed and refused and continued to fail and refuse to turn over and deliver to the plaintiff or to the Sheriff certain specifically described portions of the property, but that they did wrongfully and illegally, maliciously and without excuse, cause or justification, withhold the same and convert the same to their own use and benefit; that the value of the property so wrongfully withheld was $2,242; that certain other portions of the property covered by plaintiff's mortgage were surrendered by the defendants to the Sheriff, but that the defendants had wantonly, maliciously, wilfully and illegally damaged and depreciated such property, an itemized list of which is set forth in the

petition, and the damage to which is alleged to be $9,835, for all of which plaintiff prayed recovery against defendants in the sum of $21,543.18, plus interest.

In a second cause of action plaintiff alleges that he acquired the remaining undivided one-third interest in the personal property covered by the mortgage from R. E. Stevenson, to whom it had been awarded in the foreclosure action. The second cause of action proceeds by alleging that on or about the 10th day of May, 1937, the defendants did wrongfully, illegally and without excuse, cause or provocation, convert to their own use and benefit plaintiff's undivided one-third interest in certain items and articles petitioner described, the entire value of which was $2,242.50, and by virtue of which plaintiff was damaged in the sum of $747.50 and defendants did further wrongfully, illegally and maliciously damage, misuse and depreciate in value other property of which plaintiff, by virtue of the assignment, owned an undivided one-third interest, by virtue of which plaintiff suffered and sustained other damages in the total sum of $3,276.77, and prayed for the recovery of the further sum of $5,519.15.

The defendants filed their answers denying the allegations of the petition seeking to charge them with liability, and pleaded affirmatively as a defense the Statute of Limitation. A jury was waived and the cause was submitted to the court for trial. At the conclusion of the trial defendants interposed demurrers to the evidence of plaintiff.

The court found as a fact that the defendants went into possession of the property in controversy about July, 1931, and that the evidence failed to establish what part of the personal property for which plaintiff had a judgment of foreclosure December 10, 1930, was located on the Victorian Theater property at the time the defendants or part of them went into possession of the same; that the evidence failed to establish the value of the personal property which was shown to have been in the Victorian Theater at the time the defendants or part of them took possession of the same or at the time the plaintiff claims the conversion occurred, June 10, 1937. The court concluded as a matter of law that the conversion, if any, occurred in 1931 and that plaintiff's cause of action, if any, arose at the time of the conversion, and was barred by the Statute of

Limitations of the State of Oklahoma. The court sustained the demurrers to the evidence of plaintiff, and entered judgment for defendants. Motion for a new trial was overruled, and plaintiff appealed.

The theory upon which plaintiff seeks to recover is not clear. The petition sets out facts stating a cause of action based on conversion of plaintiff's two-thirds interest in the property at the time defendants went into possession of the theater building and a further conversion about May 10, 1937, of the one-third interest in the property acquired by plaintiff by assignment. Now, apparently seeking to avoid the Statute of Limitations, plaintiff contends in his brief and in this court that defendants took possession of his property in 1931 as voluntary bailees; that they continued to hold the same until the execution was issued in 1936 and then refused to turn over to the Sheriff certain portions of plaintiff's property and turned over the remaining portions thereof in damaged condition. The same theory is advanced as to the one-third interest acquired by assignment in December, 1936, save that the conversion is charged as of May 10, 1937.

Fairly construed, the amended petition clearly indicates a purpose to plead an action in conversion and seeks recovery of the value of that property not turned over and of damages for the property which was ultimately delivered to plaintiff.

■ The ordinary measure of damages for conversion of property is its value at the time and place of conversion, together with interest. First National Bank of Lawton et al. v. Thompson, 41 Okl. 88, 137 P. 668; Dunn v. Modern Foundry & Machine Co., 51 Okl. 465, 151 P. 893; First Natl. Bank of Tipton v. Carroll, 103 Okl. 5, 229 P. 165.

■ Where property has been converted and is thereafter returned to the owner, the measure of damages is the diminution in value caused by the wrong of the person to be charged. 65 C.J. § 271, p. 147; Aylesbury Mercantile Co. v. Fitch, 22 Okl. 475, 99 P. 1089, 23 L.R.A.,N.S., 573; Jackson v. Innes, 231 Mass. 558, 121 N.E. 489; Lawyers' Mortgage Inv. Corp. of Boston v. Paramount Laundries, 287 Mass. 357, 191 N.E. 398; Taylor v. Brewer, 94 N.J. L. 392, 110 A. 693; Rapid Machine Works v. Silberstein, 140 Misc. 30, 248 N.Y.S. 735.

■ Where the subject of a bailment is injured while in the possession of the bailee, the measure of damages is likewise the diminution in value caused by the wrong of the bailee. 6 C.J. § 170, p. 1165; Schroer v. Cole, 50 Ga.App. 472, 178 S.E. 312; Warren v. Mitchell Motors, 52 Ga.App. 58, 182 S.E. 205; Attala Warehouse & Compress Co. v. J. N. Alexander Merc. Co., 139 Miss. 615, 102 So. 779; Wellberg v. Duluth Auto Supply Co., 146 Minn. 29, 177 N.W. 924; Freeman & Freeman Oil Co. v. Lyman, Tex.Civ.App., 121 S.W.2d 644. Therefore, whether we treat the transaction as a bailment or a conversion, the measure of damages is the same.

■ To recover on either theory plaintiff must establish by competent evidence what property defendants took possession of, the time of such taking, the fair and reasonable value of such property at such time, and the fair and reasonable value of the property returned to plaintiff at the time it was returned.

■ Plaintiff's theory seems to be that defendants converted his two-thirds interest in the personal property about December 10, 1930, when the decree of foreclosure was entered. The court's finding, sustained by evidence, is that a receiver was appointed who took possession of the property and that defendants did not take possession of the property until about July 1, 1931, at the expiration of the period of redemption. Such property as was returned to plaintiff was returned about May 10, 1937, as the result of demand made by the Sheriff pursuant to the special execution issued December 16, 1936. No other demand was ever made for the return of any of this property.

There is a dearth of testimony tending to show what property was in the building when defendants took possession, about July, 1931. All the testimony adduced on this point relates to another date, December, 1930, some seven months before defendants took possession. Even assuming that all the property claimed by plaintiff was in the building in December, 1930, we may not presume that it remained there until defendants took possession in July, 1931. The testimony attempting to fix the value of the property at the time of the conversion is entitled to but little credence. Zartaludes, the only witness attempting to establish value at the time of conversion, testified that in fixing the value of this property he resorted to the original price paid for it when the property was bought in 1924. It goes without saying that the value of the property in 1924 could not be its value some seven years later. But giving to this testimony such weight as it merits, it also relates to December, 1930. There is no evidence attempting to fix the value of the property in July, 1931, when the receivership terminated and defendants went into possession. Again we can not assume that the value of the property in July, 1931, was the same as in December, 1930. It is quite possible that it may have received rough usage during the receivership and have been greatly depreciated.

■ The failure of plaintiff to establish the damage to the property by the alleged wrongful conduct of defendants precludes a recovery and it is therefore unnecessary to consider the other assignments of error urged on this appeal.

The judgment of the trial court is affirmed.